### ROZENER GILBERT
*vs.*
### LUCY BRAGG ET AL.

Superior Court        Windham County        File No. 7651

MEMORANDUM FILED DECEMBER 28, 1940.

*William Perry Barber,* of Putnam, for the Plaintiff.

*Mahlon H. Geissler,* of Putnam, for the Defendants.

SIMPSON, J.   It appears in this case that on May 17, 1939, the plaintiff conveyed to the defendants certain land, with a small house and barn and shed thereon, the value of all of which at the time was not over $350.   The expressed consideration for the conveyance was that the defendants would "provide a suitable home for the aforesaid grantor during the remainder of her natural life, with privilege to the grantor to enter onto premises and pass to and from therefrom without hindrance."   A further part consideration was that "the grantees shall take and have possession of all furniture and furnishings in the dwelling house and all small tools and farming tools on the premises."

In this action the plaintiff, in the first count of the complaint, alleges that the defendants have failed and neglected to provide the plaintiff with a "suitable" home in accordance with the agreement, and, in the second count, that the deed was procured by undue influence, domination and control, improperly exerted upon the plaintiff, and seek damages and the cancellaton of the deed.

The agreement as expressed in the deed is uncertain as to the location of the "suitable home", and what was to be furnished plaintiff in connection therewith.   For the purpose of determining just what the agreement was between the parties, the court must resort to the situation of the parties, and what was said about the subject matter before the execution of the deed.

It appears that the plaintiff had for some years lived alone in the small house on the property in question, and that in March, 1939, she suffered an attack of bronchial pneumonia and was attended by a physician.   The defendant, Lucy Bragg,

who is a practical nurse, was engaged at the time in the household of John Redhead, about one and one-half miles from plaintiff's house. During plaintiff's illness, Lucy Bragg was called in to attend and did attend the plaintiff, sometimes staying all night and leaving early next morning. At other times she spent only a portion of the day at plaintiff's home. Some time in April, after plaintiff had recovered so she could get about, she visited Mr. Redhead's home and there saw the defendant, Lucy Bragg, at different times, and at one time plaintiff suggested to Lucy Bragg that she come and live with her, and on being told by the defendant that she had to work for a living, plaintiff assured her that she would not have to work so hard if she came to live with her, and finally told her, "If you come and live with me and take care of me the rest of my life I'll give you my property." After considering the matter for some time, Lucy Bragg assented to the proposition, and on or about May 1, 1939, she left her place of employment, where she was receiving $30 per month and board and lodging, and went to live with plaintiff. On May 17, 1939, plaintiff, so far as it appears, without any solicitation from Lucy Bragg, took her old deed from a place where she kept it and both went to the town clerk's office. At the town clerk's office the plaintiff informed the town clerk what she wanted and asked him to draw a deed to Lucy Bragg and to Lewis Bragg, Lucy Bragg's stepson. The name of Lewis Bragg was inserted in the deed at plaintiff's suggestion. After the deed was prepared the plaintiff, after being thoroughly informed as to the contents, signed it and duly acknowledged it, and it was left with the town clerk to be recorded. The plaintiff at the time was 78 years of age, but was in full possession of her faculties and thoroughly understood the nature of her act.

The defendant, Lewis Bragg, knew nothing about the deed at the time of its execution. Two or three days after its execution the plaintiff showed the deed to Lewis Bragg, who was then living elsewhere, and said, "See what I have done for you," and stated that he could come and live at the place and thus save his money. It is clear, therefore, that Lewis Bragg exerted no influence on the plaintiff, improper or otherwise, which induced her to execute the deed. Nor is the court able to find any undue influence on the part of Lucy Bragg.

Lewis Bragg went to live with his stepmother and the plain-

tiff shortly after he was informed of the execution of the deed, and the three lived together in the house, but it is uncertain how long. It may have been until Saturday, June 3rd or Saturday, June 10, 1939. The evidence is contradictory, but the probability is that it was June 3, 1939. On the afternoon of that day Lewis Bragg brought some children to the house and the plaintiff became enraged at their presence, went to her room, and early next morning got up and as she says "hit the road." Neither of the defendants knew that she had gone until they tried to locate her for breakfast. They subsequently learned that she had gone to the house of one Belleville, two or three miles distant, and went to bring her back home, but were told that she was not there. Within a few days plaintiff called at her home for some clothes and was permitted by Mrs. Bragg to take them. At a later date she came to the house with the second selectman to get some things, but was not permitted to take anything other than her personal things, and was asked to return. On this occasion she claims she was hit on the wrist by Mrs. Bragg with a brush handle as she was taking some sheets out of the bureau drawer. This is denied by both Mrs. Bragg and Lewis Bragg and the court is not satisfied she was hit as stated. She was told she could not take any of the furnishings of the house and was asked to return and stay there. She became enraged at not being allowed to take any of the furnishings of the house and left without notifying the selectman she was going or telling him that she had been struck on the hand, although she said she had him go with her for protection. The selectman did hear her told that if she would come back to live there she could have anything she wanted.

Since leaving, on June 3, 1939, the plaintiff has refused to return to her home. Under the pleadings and in view of the agreement between the parties, the burden was upon the plaintiff to prove that she was justified in leaving the house and also that the deed was procured by improper influence, domination and control. She has failed to prove either of these claims, and under the circumstances the court will have to leave them as they are.

The issues are therefore found for the defendants, and judgment rendered accordingly.